**RIKER DANZIG LLP**
Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Tod S. Chasin, Esq. (TC-0122)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tschellhorn@riker.com
tchasin@riker.com

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| 87 JACOBUS AVE, LLC, | Case No. 23-14955-SLM |
| Debtor. | Honorable Stacey L. Meisel |

**DEBTOR'S OMNIBUS REPLY TO OBJECTIONS FILED TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (II) GRANTING A LIEN AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

87 Jacobus Ave, LLC (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, by and through its undersigned counsel, hereby submits this Omnibus Reply (the "Reply") to the separate objections filed by (i) Kearny[1] [Docket No. 56], (ii) the EPA [Docket No. 57] and (iii) the NJDEP [Docket No. 60] (collectively, the "Objections") to the Debtor's motion for entry of an order (i) authorizing the Debtor to obtain post-petition financing in the principal amount of at least sixteen million dollars ($16,000,000.00); (ii) granting the DIP

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion (defined below).

Lender a lien and superpriority administrative expense claim; (iii) modifying the automatic stay; and (iv) granting related relief [Docket No. 40] (the "Motion"). In support of the Reply, the Debtor submits the accompanying Certification of Joseph L. Schwartz ("Schwartz Cert."), and respectfully states as follows:

## PRELIMINARY STATEMENT

As the Debtor has previously outlined to the Court, in its continuing efforts to reach its goal of obtaining title to the Property through the Kearny Foreclosure Action in order to facilitate a sale of the Property to a certain third party redeveloper, and to ultimately share in the upside of that sale with the EPA and the State of New Jersey, Kearny has taken great effort to prevent the Debtor from moving this case forward. Now, through their Objections to the Motion, Kearny, the EPA and the State of New Jersey (all together, the "Objectors") band together in their concerted effort to stop the Debtor's bankruptcy case from proceeding. Through their Objections, these objecting parties not only attempt to prevent the Debtor from obtaining important DIP financing, which, ironically, will be used to repay Kearny in full, but they also try to distract and muddy the waters by advancing a number of incorrect legal arguments and by raising a variety of wholly inaccurate facts.

The Debtor submits that the Court should look past both the patently weak arguments and the charade, and instead focus both on the Objectors' transparent motives and the Debtor's good faith efforts to obtain approval for the DIP Loan and to move this case forward toward a reorganization.

For these reasons, the reasons set forth in the Motion, and the reasons set forth herein, the Debtor respectfully requests that the Court grant the Motion.

**REPLY TO OBJECTION OF TOWN OF KEARNY**

**A. Kearny's Self-Contradicting Contention That the State of New Jersey Liens May Have Priority over Kearny is Wholly Incorrect**

1. Rather than support the Motion, which would ultimately lead to the repayment and satisfaction of Kearny's real estate tax claims, as noted, Kearny instead argues against its own interests, all in an obvious effort to obtain title to the Property through the Kearny Foreclosure Action in order to facilitate a sale by Kearny of the Property to its chosen third party redeveloper, and to ultimately share in the upside with the EPA and the State of New Jersey pursuant to an agreement reached among the Objectors.

2. First, Kearny claims that there purportedly are two NJ Spill Fund liens on the Property. In addition to the fact that Kearny lacks standing to make arguments on behalf of the State of New Jersey (the concept of lack of standing is discussed in more detail herein, in reply to the EPA's arguments), and contrary to Kearny's self-contradicting assertions, the State of New Jersey does not have any valid liens against the Property. Therefore, the State of New Jersey cannot have priority over Kearny's first priority real estate tax claims.

**1. The State of New Jersey's Alleged Claims.**

3. The NJ Spill Fund and the NJDEP claim to have a lien on the Property by virtue of a Judgment By Default (Judgment No. 053887-05) that was entered on February 18, 2005 against Syncon and Farnow in the Superior Court of New Jersey, Law Division – Hudson County, Docket No. L-611-03 in the amount of $6,150,673.48, based on unreimbursed environmental cleanup costs (the "2005 State of NJ Judgment").

4. The NJ Spill Fund and the NJDEP also claim to have a lien or other interest in the Syncon Sites by virtue of a separate Judgment (Judgment No. DJ-206355-95) that was entered

on September 15, 1995 against Farber and Farnow in the Superior Court of New Jersey, Law Division – Mercer County, Docket No. ND0019168-95 (the "1995 State of NJ Judgment").

## 2. The Consent Judgment of Satisfaction and Release.

5. However, years after entry of the 1995 State of NJ Judgment and the 2005 State of NJ Judgment, on August 12, 2013, a consent judgment was entered in an action titled New Jersey Department of Environmental Protection, et al. vs. Syncon Resins, Inc., et al., L-611-03, (the "Consent Judgment of Satisfaction and Release"), wherein, in consideration for, among other things, a payment to the State of New Jersey of $5,000,000 by Benjamin Farber ("Farber"), the State of New Jersey *released* Farber, Farnow, its "predecessors and successors," and Syncon, as well as its "predecessors and successors," from, among other things, all unreimbursed **past and future** environmental cleanup and removal costs and for all "Natural Resource Damages," broadly defined in the Consent Judgment of Satisfaction and Release as a release of "all claims arising from discharges at or from" the Syncon Sites. A copy of the Consent Judgment of Satisfaction and Release is attached to the Schwartz Cert., as Exhibit A.

6. Notwithstanding the fact that the State of New Jersey entered into the Consent Judgment of Satisfaction and Release in August 2013, and released Farber, Farnow and Syncon from all present and future environmental claims, on or about August 13, 2015, the NJ Spill Fund and the NJDEP filed a lien against the Property pursuant to a 1995 State of NJ Judgment, against Farnow, in the amount of $871,399.09 (the "Farnow Lien").

7. Further, notwithstanding the fact that the State of New Jersey entered into the Consent Judgment of Satisfaction and Release on August 12, 2013, on or about August 13, 2015, the NJ Spill Fund and the NJDEP filed a separate lien against Lot 12 (not the Property) pursuant to a 1995 State of NJ Judgment against Syncon, in the amount of $871,399.09, based on

unreimbursed environmental cleanup costs. This separate lien against Lot 12 only named Farber, not Farnow (the "Farber Lien").

8. On or about September 3, 2015, the NJ Spill Fund and the NJDEP filed an amended lien against Lot 12 and Farber in the amount of $871,399.09, which purported to revive a lien that was purportedly originally filed on September 15, 1995 (the "Amended Farber Lien").

9. Further, notwithstanding the fact that the State of New Jersey entered into the Consent Judgment of Satisfaction and Release on August 12, 2013, upon information and belief, on or about September 3, 2015, the 1995 State of NJ Judgment was amended to, among other things, identify Farber as a defendant (the "Amended 1995 State of NJ Judgment" and together with the 2005 State of NJ Judgment, the 1995 State of NJ Judgment, the Farber Lien, the Amended Farber Lien and the Farnow Lien, the "State of New Jersey Liens").

10. Notwithstanding the foregoing, there is no question that the Consent Judgment of Satisfaction and Release released all claims against Farber, Farnow and its predecessors and successors, and Syncon and its predecessors and successors. Indeed, the NJDEP itself concedes so in its objection to the Motion. As a result of the foregoing, Kearny's self-contradicting argument that the State of New Jersey purportedly has a lien against the Property, and that that lien supposedly has priority over Kearny's tax liens, makes absolutely no sense. Hornbook law provides that a lien serves as security for a claim. See, e.g., 1 Collier on Bankruptcy ¶ 1.03 (16th ed. 2023). Further, the Bankruptcy Code defines the term "lien" to mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (emphasis added).

13. Thus, it follows that without a claim, one cannot have a lien; and to say otherwise defies common sense:

5

> A lien can only legally attach if there is an underlying debt secured by the lien. A lien is a charge upon property for the payment or discharge of a debt. It is therefore dependent upon the existence, the amount of, and the provability of the debt. If the debt has been paid . . . the lien is extinguished.

In re Kopec, 473 B.R. 597, 600 (Bankr. D.N.J. 2012) (citation and quotation omitted); *accord,* In re Curry, 493 B.R. 447, 450 (Bankr. D.N.J. 2013) ("[T]his court is unable to determine how a lien continues to exist if the underlying debt has been satisfied." (citing Kopec)); In re Princeton Office Park L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 66 (2014) (approving Kopec stating, "[t]he word lien is a generic term that includes in its definition any claim, encumbrance, or charge on property for payment of some debt, obligation or duty whether acquired by contract or by operation of law. The lien is thus premised upon an underlying debt").

14. This is precisely the case here with the NJ Spill Fund and the NJDEP. As the NJDEP admitted in its communications with the Debtor, "[b]oth default judgments were satisfied by the payment of $5,000,000 as agreed to by the parties in the 2013 Consent Judgment. . . ." See Schwartz Cert., Exh. B.

15. Accordingly, despite Kearny's assertions to the contrary, the State of New Jersey Liens were extinguished by the release and satisfaction of the underlying claims.

**B. Kearny's Conjecture Regarding the Valuation of the Property and Assertions About Adequate Protection are Not Grounds to Deny the Motion**

16. In its objection, Kearny also attacks the Debtor's valuation of the Property in its bankruptcy schedules. In particular, after concluding that the proceeds of the DIP Loan, if approved, would need to be paid to the State of New Jersey on account of its purported first priority liens (which the State of New Jersey does not have), Kearny suggests that it lacks adequate protection.

17. First, as noted, the State of New Jersey does not hold first priority liens against the Property. Next, despite Kearny's protestations, the Debtor proposes to repay Kearny in full, thereby causing Kearny's interests in the Property not to decrease for purposes of an adequate protection analysis. As a result, Kearny certainly does not lack adequate protection.

18. Kearny asserts that its tax liens, based on tax sale certificates, have a current redemption amount of $15,745,130.32. The Debtor has requested a detailed accounting as part of the Motion. In any event, the DIP Loan would provide the Debtor with at least $16 million to repay the Kearny tax liens.

19. Courts grant considerable deference to a debtor's business judgment in obtaining post-petition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. See, e.g., In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); In re L.A. Dodgers LLC, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest.").

20. To determine whether this standard is met, courts are "required to examine whether a reasonable business person would make a similar decision under similar

circumstances." In re Exide Techs., 340 B.R. 222, 239 (Bankr. D. Del. 2006), rev'd on other grounds, In re Exide Techs., 607 F.3d 957, 961 (3d Cir. 2010).

21. In applying this business judgment standard, bankruptcy courts routinely defer to a debtor's business judgment, and regularly approve these types of loan transactions unless the debtor's decision is arbitrary and capricious. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994).

22. As set forth in detail in the Motion, the Debtor has determined to move forward with the DIP Loan in the exercise of its prudent and sound business judgment, believing that the DIP Loan contains the best terms available and that no viable alternatives for post-petition financing exist under the circumstances. The DIP Loan will allow the Debtor to repay Kearny's claims in full and will eliminate the continued high accrual of interest on these prepetition claims (at the current rate of at least 12%). This will provide a significant benefit not only to Kearny, but also to the Debtor, creditors, and all parties in interest.

23. As discussed above, Kearny's claims/liens have priority over all other alleged liens or claims against the Property, as Kearny specifically alleged in the Kearny Foreclosure Action.[2] Accordingly, notwithstanding Kearny's contentions, Kearny's assertions regarding the value of the Property and/or adequate protection are incorrect red herrings.

---

[2] On or about May 3, 2023, Kearny moved for entry of final judgment in the Kearny Foreclosure Action. A copy of the proposed final judgment is attached to the Certification of Joseph Schwartz as Exhibit B that the Debtor submitted in support of the Debtor's objection to Keany's motion to dismiss the Debtor's bankruptcy case (the "Kearny Proposed Final Judgment"). See Docket No. 59-1. The Kearny Proposed Final Judgment, notice of which was expressly provided to all alleged lienholders, including the EPA and the State of New Jersey, specifically sought to foreclose out all other liens, including those asserted by the EPA and State of New Jersey.

8

**C. Kearny's Contentions Regarding Redemption, the New Jersey Tax Sale Law and the Factual History of this Matter are a Disingenuous Attempt to Deceive this Court**

**1. Kearny's assertions regarding redemption are incorrect, and Kearny should be estopped from asserting any position contrary to the position it asserted in the Kearny Foreclosure Action.**

24. Kearny also insists that, pursuant to the New Jersey Tax Sale Law, the Debtor may only redeem Kearny's tax sale certificates by intervening in the Kearny Foreclosure Action and that, because the Debtor withdrew its Intervention Motion in that action, this Motion must be denied. See Kearny Obj., Points II. and II.a., pp. 5-7 (quoting N.J.S.A. 54:5-89.1 and N.J.S.A. 54:5-98). Kearny's argument, however, is a disingenuous attempt to mislead this Court, because in the Kearny Foreclosure Action, Kearny previously argued that those very statutes on which it now relies **did not require the Debtor to intervene in the Kearny Foreclosure Action.**

25. N.J.S.A. 54:5-89.1 provides as follows:

> § 54:5-89.1. Effect of judgment on unrecorded interests; application by person recording interest to be made party
>
> In any action to foreclose the right of redemption in any property sold for unpaid taxes or other municipal liens, **all persons claiming an interest in or an encumbrance or lien upon such property, by or through any conveyance, mortgage, assignment, lien or any instrument which, by any provision of law, could be recorded, registered, entered or filed in any public office in this State, and which shall not be so recorded, registered, entered or filed at the time of the filing of the complaint in such action shall be bound by the proceedings in the action** so far as such property is concerned, in the same manner as if the person had been made a party to and appeared in such action, and the judgment therein had been made against the person as one of the defendants therein; **but such person, upon causing such conveyance, mortgage, assignment, lien, claim or other instrument to be recorded, registered, entered or filed as provided by law, may apply to be made a party to such action.** No person, however, shall be admitted as a party to such action, nor shall the person have the right to redeem the lands from the tax sale whenever it shall appear that the person has acquired such interest in the lands for less than fair market value after the filing of the complaint, except where such transferee is related by blood or marriage to, or who, because of other close or personal

> relationship with the transferor, would in normal course be a party to an instrument for little or no consideration, or where such party acquired his interest at a judicial sale.

N.J.S.A. 54:5-89.1 (emphases supplied).

26. The Kearny Proposed Final Judgment that Kearny submitted for entry in the Kearny Foreclosure Action proposed to extinguish all claims and liens other than those asserted by Kearny, including all alleged claims and all alleged liens asserted by the EPA and the State of New Jersey. See Docket No. 59-1, Exhibit B.

27. As Kearny admits in its objection to the Motion, the Debtor filed the Intervention Motion in the Kearny Foreclosure Action for the express purpose of asserting its right as the title owner of the Property to redeem the Kearny tax sale certificate. In opposition to that Intervention Motion, Kearny filed a letter brief dated May 4, 2023. See Schwartz Cert., Exh. C. Page nine of that letter brief reads, in relevant part, as follows:

> Moreover, as the Appellate Division has held, the Legislature's intent in amending N.J.S.A. 54:5-89.1 was to "protect homeowners in foreclosure from excessively low intervening offers." (internal citations omitted) *Action Holding v. McAuliffe,* Superior Court of New Jersey, Appellate Division, Docket No. A-1096-21, N.J. Super. Unpub. LEXIS 379, p. 4. The title of the bill before its adoption was "Protects homeowners in foreclosure from excessively low intervening offer." (Spencer certification, Exhibit 11)
>
> **The property at issue in this matter is not a residence. Accordingly, the procedures and protections of N.J.S.A. 54:5-89.1 and the cases interpreting it do not apply.**

See Schwartz Cert., Exh. C, p. 9 (emphasis added).

28. On the basis of Kearny's opposition to the Debtor's Intervention Motion in the Kearny Foreclosure Action, and specifically in light of Kearny's written assertion that "the

procedures and protections of N.J.S.A. 54:5-89.1" do not apply to the Debtor's redemption of Kearny's tax sale certificate, the Debtor withdrew its Intervention Motion.

29. Kearny should not now be heard to complain about the Debtor's withdrawal of the Intervention Motion in the Kearny Foreclosure Action when that withdrawal was done in direct response to Kearny's specific assertion in that action that the New Jersey Tax Sale Law **did not require the Debtor to intervene** in order for the Debtor to redeem Kearny's tax sale certificate. Kearny also should not be allowed to now seek to defeat the Debtor's Motion in this Court by contradicting its own previous assertion in the Kearny Foreclosure Action by arguing that the New Jersey Tax Sale Law **did, in fact, require the Debtor to intervene** in order to redeem the tax sale certificate.

30. In short, Kearny's disingenuous attempt to speak in "two tongues" and to deceive this Court should not be countenanced. Instead, the Debtor submits that this Court should enter an order directing that Kearny is required to accept repayment in full from the proceeds of the DIP Loan as the due and effective redemption.

### 2. The Debtor properly recorded the deed to the Property.

31. Kearny's statements that the Debtor "purports" to hold title to the Property and its contention that the Debtor supposedly has not recorded the deed after the closing of the sale of the Property to the Debtor are patently false. As expressly set forth in the First Day Declaration of Lance Lucarelli [Docket No. 5] (the "First Day Declaration"), the Debtor took title to the Property prior to the Petition Date. See First Day Declaration at ¶ 6. Further, putting aside Kearny's deficient land record search, the deed from Farnow to the Debtor was recorded on June 15, 2023 in the Hudson County Register at Book 9753, Page 136. See Schwartz Cert., Exh. D.

11

## REPLY TO OBJECTION OF THE NJDEP

### A. The Consent Judgment of Satisfaction and Release Satisfied All of NJDEP's Claims

32. In an effort to avoid the fact that it released all of its claims, the NJDEP contends that because the Consent Judgment of Satisfaction and Release makes no mention of certain of the State of New Jersey Liens, those liens supposedly were not subject to the terms of the Consent Judgment of Satisfaction and Release. The NJDEP goes on to say that "[t]he Consent Judgment resolved the Released Parties' in personam liability, but the Spill Act lien against the Property was unaffected." These contentions are nonsensical and have no merit.

33. As discussed in detail above, pursuant to the Consent Judgment of Satisfaction and Release, all obligations underlying the State of New Jersey judgments were satisfied and released by, among other things, a payment of $5,000,000 to the State of New Jersey by Farber, which the NJDEP acknowledges it received, and which extinguished all its claims for past and future response costs, as well as all Natural Resource Damages claims. See Schwartz Cert., Exh. B ("Both default judgments were satisfied by the payment of $5,000,000 as agreed to by parties in the 2013 Consent Judgment. . . .").[3]

34. As explained above, by virtue of having no claims that survive the August 12, 2013 Consent Judgment of Satisfaction and Release, the NJDEP cannot have any liens. See supra at ¶¶ 12-14.[4]

---

[3] Additionally, the NJ Spill Act requires the NJ Spill Fund to comply with certain procedural "notice" requirements prior to asserting and obtaining a "super lien." See N.J.S.A. 58:10-23.11g. The NJDEP has not provided any evidence that it has complied with the procedural requirements of the statute to assert a "super lien."

[4] Assuming, *arguendo*, that the State of New Jersey Liens were not released as a result of the Consent Judgment of Satisfaction and Release, the State of New Jersey liens are still subject to a bona fide dispute. In particular, the Debtor seeks, through the Extent and Validity Lawsuit, to have any liens asserted by the State of New Jersey against the Property declared void and/or to avoid all the State of New Jersey Liens.

### B. The Extent and Validity Lawsuit is the Proper Forum to Determine the Extent and Validity of the NJDEP's Alleged Claims

35. The Debtor has attempted on a number of occasions to obtain information from the State of New Jersey regarding the State of New Jersey's alleged claims and liens against the Property. However, the State of New Jersey has failed and/or refused to provide the Debtor with the information requested and instead has provided confusing and shrouded replies which, not surprisingly, mischaracterize the effect of the Consent Judgment of Satisfaction and Release. See, e.g., Schwartz Cert., Exh. B.

36. To dispel all ambiguity and to cause the State of New Jersey to prove the extent, validity, and priority of its claims, the Debtor filed the Extent and Validity Lawsuit to determine to what extent the claims of the State of New Jersey are valid. To date, the State of New Jersey has failed to reply to that complaint.

37. As a result of the foregoing, the State of New Jersey Liens are currently the subject of a bona fide dispute and are adequately protected – to the extent that any adequate protection is necessary – given the fact that the proposed DIP Loan will accrue interest at a far lower rate of interest than currently is accruing in favor of Kearny. Therefore, the proposed lien to be granted in favor of the DIP Lender will not result in any decrease in the value of the other alleged secured creditors' interests. Accordingly, all alleged lienholders will actually benefit from the DIP Loan, and, as a result, will be adequately protected. See Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.), 16 F.3d 552, 564 (3d Cir. 1994).

## REPLY TO OBJECTION OF THE EPA

### A. The EPA Lacks Standing to Advance the Arguments of Others

38. A large portion of the EPA's objection to the Motion is directed to advancing arguments as to why the NJDEP liens are purportedly first priority liens. In addition to the fact

that this is incorrect for all the reasons previously noted, the EPA lacks standing to argue that Kearny's lien may not have first priority, that the State of New Jersey supposedly has first priority liens against the Property and/or that the NJDEP is entitled to adequate protection.

39. "A proponent of a legal right does not have standing to seek relief for claims based upon the rights of third parties." Decus, Inc. v. Heenan, No. 16-5849, 2017 U.S. Dist. LEXIS 58730, at *4 (E.D. Pa. Apr. 18, 2017) (citing Rakas v. Illinois, 439 U.S. 128, 139 (1978)). A litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). The issue of whether the State of New Jersey has liens, and the NJDEP's purported right to adequate protection does not affect the EPA and is solely based on the rights of a third party. Consequently, the EPA's arguments on this topic must necessarily fail and should not be heard. See id.

40. Further, the EPA's so-called joinder [Docket No. 58] (the "EPA Joinder") to Kearny's motion to dismiss the Debtor's bankruptcy case [Docket No. 32] raises additional facts and arguments based on new theories that were not presented in Kearny's original motion to dismiss.

41. Pursuant to Bankruptcy Rule 2002(a)(4), the Debtor is entitled to at least twenty-one days' notice prior to a hearing on any motion seeking the dismissal of its bankruptcy case. See Fed. R. Bankr. P. 2002(a)(4). The EPA should not now be permitted to skirt and circumvent the notice requirements of the Bankruptcy Rules by presenting new theories to which the Debtor has not been afforded the requisite opportunity to respond, particularly when the EPA has not filed its own motion to dismiss. Accordingly, the Court should not consider the EPA Joinder.

42. Moreover, throughout its objection, the EPA relies upon "information" provided by Kearny suggesting that Kearny is considering waiving or reducing the interest on its tax sale certificates in order to allow the issues in this case to be addressed "without undue time pressure." According to the EPA, Kearny "has indicated that this decision could be made on August 8, 2023, the next meeting of the Town Council." The EPA contends that this would alleviate any harm that the Debtor suffers and would negate the Debtor's contention that granting the DIP Lender a priority lien benefits all parties in interest. Notwithstanding the foregoing, Kearny is currently prohibited by the automatic stay from taking any act to affect property of the estate. See 11 U.S.C. § 362. Further, this argument advanced by the EPA does not address the harm which the Debtor and the estate would suffer if the Debtor fails to meet the deadlines imposed by the DIP Lender.

43. In sum, the EPA has no standing to argue that Kearny's lien may not have first priority or that the NJDEP is entitled to adequate protection. Further, as discussed in detail above, the State of New Jersey has released all claims against the Farber Estate, Farnow, its "predecessors and successors," and Syncon and its predecessors and successors via the Consent Judgment of Satisfaction and Release, thereby extinguishing all claims of the State of New Jersey for which it asserts a lien.

### B. The EPA Does Not Have a Lien Against the Property and So There is Nothing to Adequately Protect

44. In its objection to the Motion, the EPA also asserts that the Motion should be denied because the EPA lacks adequate protection.

45. However, on or about February 6, 1995, the EPA filed a lien against Lot 12 (but not the Property) in the amount of at least $19,500,035 wherein the EPA represented that the lien was filed to secure payment by Farber, the owner of Lot 12. The lien (the "Farber CERCLA

15

Lien") purportedly represented unreimbursed response costs incurred at that time by the EPA in performance of its environmental cleanup efforts under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). The Farber CERCLA Lien was thereafter recorded in the Office of Hudson County Register at Book 5622, Page 318.

46. Further, on or about December 31, 1996, the EPA filed a Notice of Federal Lien in the amount of at least $17,582,000 to secure payment by Syncon, which purportedly represented unreimbursed response costs incurred at that time by the EPA in performance of its environmental cleanup efforts under CERCLA (the "Syncon CERCLA Lien," and together with the Farber CERCLA Lien, the "EPA CERCLA Liens"). The Syncon CERCLA Lien was thereafter recorded on January 6, 1997 in the Office of the Hudson County Register at Book 6098, Page 141 ff.

47. At all relevant times prior to the Petition Date, Farnow was the owner the Property until it conveyed the Property to the Debtor.

48. When recorded, the EPA's Syncon CERCLA Lien incorrectly named Syncon as the owner of the Property when Syncon was not then the owner of the Property.

49. At the time the EPA's Syncon CERCLA Lien was recorded, the Property was owned by Farnow.

50. By failing to file or record a lien properly naming Farnow as the owner of the Property prior to the Petition Date, the EPA failed to perfect any of its asserted EPA CERCLA Liens against the Property.

51. As a result, and as alleged in the Extent and Validity Lawsuit, any liens asserted by the EPA against the Property were not properly perfected and are therefore void and/or

avoidable by the Debtor under 11 U.S.C. § 544 and may be recoverable for the benefit of the estate under 11 U.S.C.§ 550.

52. Accordingly, the EPA has no liens against the Property that are enforceable in this Chapter 11 case, and its arguments regarding adequate protection are inapposite.

53. In any event, to the extent adequate protection is nonetheless required, the Debtor submits that allowing the type of subrogation of lien position the Motion requests would not only adequately protect the EPA, the State of New Jersey, and the Farber Estate, <u>whose liens are in bona fide dispute</u>, but <u>would actually improve</u> those alleged lienholders' positions given the fact that the DIP Loan would accrue interest at a far lower rate than what was accruing in favor of Kearny. Therefore, the proposed lien to be granted in favor of the DIP Lender would not result in any decrease in the value of the other alleged secured creditors' interests.

54. Accordingly, these alleged lienholders will suffer no decrease in their positions but will actually benefit from the DIP Loan, and are therefore adequately protected. <u>See Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.)</u>, 16 F.3d 552, 564 (3d Cir. 1994).

### C. The Court Should Grant the Debtor's Request for a Waiver of the Requirements Under Rule 6004(a)

55. As set forth in the Motion, the Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a), and (ii) the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm.

56. The EPA contends that the Debtor and the estate would not suffer any irreparable harm if this request is denied. However, the DIP Lender specifically required this provision be included in the Order approving the Motion, and without approval of this request, the Debtor will

not be able to satisfy the terms of the Letter of Intent, which may compel the DIP Lender to renege on its commitment to provide the DIP Loan. As the Debtor has repeatedly submitted, without the DIP Loan, the estate will be immediately and irreparably jeopardized and its creditors and other interested parties irreparably harmed by the Kearny Foreclosure Action.

## CONCLUSION

**WHEREFORE**, for all of the reasons set forth herein, the Debtor respectfully requests that the Court (i) overrule the Objections; (ii) grant the Motion and enter the Order; and (iii) grant the Debtor such other and further relief as the Court may deem just and proper.

Dated: August 1, 2023
Morristown, New Jersey

Respectfully submitted,

**RIKER DANZIG LLP**
Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Tod S. Chasin, Esq. (TC-0122)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
tschellhorn@riker.com
tchasin@riker.com

By: */s/Joseph L. Schwartz*
       Joseph L. Schwartz

*Counsel to the Debtor and Debtor-in-Possession*

4894-5554-2131, v. 7